1  MARIA C. RODRIGUEZ (SBN 194201)
   maria.rodriguez@dlapiper.com
2  KATHARINE J. LIAO (SBN 255157)
   katharine.liao@dlapiper.com
3  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars
4  Suite 400 North Tower
   Los Angeles, California 90067-4704
5  Tel: (310) 595-3000
   Fax: (310) 595-3300
6
7  Attorneys for Defendant
   HAJOCA CORPORATION
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TINOCO, an individual, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HAJOCA CORPORATION, a professional corporation, and DOES 1-50, inclusive, <br><br> Defendants. | CASE NO. 2:17-cv-06187 <br><br> **DEFENDANT HAJOCA CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** <br><br> Complaint Filed: July 19, 2017 |

**INTRODUCTION**

This class action is hereby removed from state court to federal court, because, at the time the Complaint was filed, and presently, Defendant HAJOCA CORPORATION ("Defendant") and Plaintiff JOSE TINOCO are citizens different states, the amount in controversy exceeds $5,000,000, and there are over 100 alleged class members. 28 U.S.C. §§ 1332(d)(2)(A), (5)(B)-(6) and 1441(a)-(b)(1).

**SUMMARY OF ALLEGATIONS**

1. On or about July 19, 2017, Plaintiff Jose Tinoco ("Plaintiff") commenced an action against Defendant in the Superior Court of California, County of Los Angeles, in his complaint entitled *Jose Tinoco, on behalf of himself and all others similarly situated v. Hajoca Corporation*, Case No. BC669091 ("Complaint").

2. The Complaint alleges seven causes of action, including: (i) failure to pay overtime – miscalculation of rate; (ii) failure to pay overtime - rounding; (iii) failure to timely pay wages upon termination; (iv) failure to provide meal periods; (v) failure to provide rest periods; (vi) failure to furnish and maintain accurate payroll records; and (vii) unlawful business practices pursuant to Business and Professions Code §17200.

3. Plaintiff served the Summons and Complaint on July 20, 2017.

**JOINDER**

4. Defendant is not aware of any other defendant having been served with a copy of Plaintiff's Complaint. 28 U.S.C. § 1446(b)(2)(A).

**BASIS FOR JURISDICTION**

5. The district courts of the United States have original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant."

U.S. Class Action Fairness Act of 2005 ("CAFA") under 28 U.S.C. § 1332(d)(2)(A). Jurisdiction by the district court is indisputable when the alleged class size exceeds 100 members. 28 U.S.C. (d)(5)(B).

## THE PARTIES' DIVERSITY OF CITIZENSHIP

6. At all relevant times, Plaintiff is and has been a citizen and resident of Vista, California (Complaint, ¶ 7), and Defendant is and has been incorporated under the laws of the state of Maine, with its principal place of business and corporate headquarters in the state of Pennsylvania (Declaration of Lee Cormier, ¶ 3).

7. All potential "Doe" defendants shall be disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). In addition, the allegations in the Complaint with respect to the potential "Doe" defendants are too vague as to their identity or relationship to the claims. (Complaint, ¶ 9.)

## THE AMOUNT IN CONTROVERSY AND CLASS SIZE

8. **Amount in Controversy.** The amount in controversy requirement is satisfied, because Plaintiff is seeking an aggregate amount of damages that exceeds $5,000,000, exclusive of interest and attorneys' fees and costs.[1]

9. Under CAFA, individual class members' alleged claims are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005). Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should

---

[1] Defendant acknowledges only that the amount put in controversy by Plaintiff's allegations exceeds $5,000,000 and in no way concedes the truth of any of Plaintiff's allegations or that Plaintiff is entitled to relief in that amount or any amount whatsoever. Defendant expressly denies any allegations of wrongdoing and reserves all rights to assert any and all applicable defenses in this matter.

be resolved in favor of federal jurisdiction. *Id.*, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case…. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

10. To establish that the alleged amount in controversy exceeds the jurisdictional amount, a defendant must establish that it is more likely than not that the amount in controversy exceeds $5,000,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

11. Defendant is able to establish that the alleged amount in controversy exceeds the jurisdictional threshold, based, as a matter of law, on the Complaint's allegations.

12. **Class Size.** Plaintiff's Complaint purports that the number of similarly situated employees are in "excess of over 200 employees" ("Putative Class Members") who could fall under one or more of six subclasses during the four years prior to the filing of his July 19, 2017 Complaint ("Class Period"). (Complaint, ¶¶ 2-3, 23.)

13. The alleged subclasses are: (1) Bonus Overtime Subclass (all members who allegedly received profit sharing bonuses); (2) Rounding Subclass (all members who allegedly had their clock-in and out times rounded by Defendant); (3) Waiting Time Subclass (all members who allegedly did not receive the compensation owed to them at termination); (4) Meal Period Subclass (all members who were allegedly denied meal periods); (5) Rest Period Subclass (all members who were allegedly denied 10 minute rest breaks); (6) Wage Statement Subclass (all members who allegedly were not paid for all hours worked and/or at the proper overtime rate of pay); and (7) The UCL Subclass (all members who are allegedly

1 owed restitution). (Complaint, ¶ 26.)

2  14. **Alleged Missed Meal and Rest Periods Claims.** Plaintiff's fourth and fifth causes of action allege that the Putative Class Members who comprise the Meal and Rest Period Subclasses are entitled to one hour of premium pay for each alleged meal and rest period violation during the four years preceding the filing of the Complaint.

15. While Defendant disputes Plaintiff's meal and rest period allegations, Cal. Labor Code Section 226.7 clearly provides a penalty of one hour of pay for each day in which a meal or rest period is not properly provided. California law defines this extra hour of pay as a wage premium, not a penalty, for statute of limitations purposes. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1114 (2007). Thus, the statute of limitations for these claims is three years, and is extended an additional year pursuant to the four-year statute of limitations per Business & Professions Code Section 17200 as Plaintiff asserts missed meal and rest periods as part of his unfair competition claim. (Complaint, ¶ 77.) The maximum penalty in any single day is thus two hours of pay. See *United Parcel Service, Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 65 (2011) (stating that a plaintiff may recover up to two additional hours of pay on a single work day for meal and rest break violations).

16. Plaintiff is silent as to the total amount of alleged meal periods that the Meal Period Subclass was allegedly denied, but does state that "employees['] [meal] breaks frequently began late, after the start of the employee[s'] sixth hour…[and] records show instances of interrupted meal periods, missed meal periods, and missed second meal periods for shifts greater than 10 hours." (Complaint, ¶60.) Plaintiff further alleges that the records he has reviewed, thus far, show that the number of late meal periods, alone, totals 91% of all meal periods taken. (Complaint, ¶19.)

17. As to rest periods, Plaintiff alleges that Defendant "failed to maintain a

policy and practice that provides…off-duty rest periods" and that "Plaintiff and his fellow employees regularly worked in excess of four hours without being provided at least a ten minute rest period…[, and,] [i]n fact, Plaintiff never received his rest breaks." (Complaint, ¶20.)

18. Since all Putative Class Members would be governed by the alleged meal and rest period policies and practices of Defendant, for the purpose of this removal, it is assumed that the Meal and Rest Period Subclasses would encompass all Putative Class Members, including Plaintiff.

19. During the relevant time period, between July 19, 2013 and July 19, 2017, Plaintiff alleges that over 200 employees could qualify as Meal and Rest Period Subclass Members, and that his hourly rate of pay was $15 per hour.

20. Assuming that the entire Meal and Rest Period Subclass worked roughly 201,603 days (1,003 days worked per Member during the four year period $\times$ 201 Members), and assuming one meal and one rest period violation 91% of the time (183,459 $\times$ 2 (meal and rest periods)), the total number of violations equals 366,918, making the amount in controversy for these claims at least $5,503,770 (366,918 $\times$ $15 per violation).

21. Even if you assume only one violation per day at a 91% violation rate (one meal period or one rest period violation), the amount in controversy for this claim alone still constitute more than half the threshold (183,459 meal or rest period violations $\times$ $15 per hour = $2,751,885).

22. **Alleged Failure to Furnish and Maintain Accurate Payroll Records.** Plaintiff's sixth cause of action, alleging failure to furnish and maintain accurate payroll records, drives the amount in controversy even higher.

23. Plaintiff alleges that Defendant "knowingly and intentionally failed to furnish the Class Members and 'Wage Statement Subclass' … with accurate and itemized statements for each pay period that they worked and failed to maintain accurate payroll records." Complaint, ¶ 75. While Defendant denies this charge,

1 pursuant to Cal. Labor Code Section 226(e), an employee suffering an injury as a result of an intentional failure by an employer to provide accurate wage statements, is entitled to a penalty of $50 for the initial pay period in which the violation occurred, and $100 for each violation in a subsequent pay period, not to exceed the aggregate amount of $4,000 per employee. Claims under Section 226 are subject to a one-year statute of limitations. Cal. Code Civ. Proc. § 340(a).

24. If one assumes that during the one-year period preceding the filing of the Complaint (July 19, 2016 through July 19, 2017), Defendant employed approximately 100 individuals who could qualify to join the Class Member/Wage Statement Subclass. As such, the purported amount in controversy for this claim is at least $400,000 (100 Class Members/Wage Statement Subclass Members × $4,000 per Class Member/Wage Statement Subclass Member).

25. Plaintiff does not allege that the Class Members/Wage Statement Subclass are entitled to less than the maximum $4,000 penalty payment for this claim. Indeed, Plaintiff asserts that Defendant violated the statute requiring accurate wage statements "each pay period they worked." Complaint, ¶ 75. As such, "[i]t is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the Class Period could potentially have been noncompliant." *Mejia v. DHL Express*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015).

26. **Alleged Failure to Timely Pay Wages Upon Termination.** Plaintiff alleges in his third cause of action that Defendant "failed to pay…all wages due…at the time of termination or quitting, including overtime wages" to the Putative Class Members comprising of the Waiting Time Subclass. (Complaint, ¶ 75.)

27. Cal. Labor Code Section 203(a) provides that "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid. The statute, however, limits such wages to no "more than 30

days."

28. Section 203 claims have a three-year statute of limitations. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010).

29. Between July 19, 2014 and July 19, 2017, Plaintiff assumes 100 individuals were terminated and could qualify to be part of the Waiting Time Subclass, with an average hourly rate of $15.

30. Plaintiff does not specify how late he believes these 100 Waiting Time Subclass Members received their final paychecks or how many hours they worked each day. But it is reasonable to assume—strictly for removal purposes—that every Waiting Time Subclass Member who stopped working for Defendant during the pertinent period has a claim for the maximum 30-day penalty and worked an average of 8 hours per day. See *Mejia,* 2015 WL 2452755, at *6 (finding that it is not unreasonable to assume a 100% violation rate at the maximum penalty of 30 days at 8 hours because it is reasonable to assume a 100% violation rate); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645, at *8 (N.D. Cal. May 27, 2014) (finding that "[s]ince Plaintiff alleges that each and every class member worked off the clock, all members of the subclass have a claim for waiting time penalties for the full 30 days").

31. Assuming that all 100 Waiting Time Subclass Members are owed the maximum penalty of 30-days of wages, for an average of 8 hours of daily work, the alleged amount in controversy for this claim is at least $360,000 (100 Waiting Time Subclass Members × 8 hours worked per day × $15 per hour × 30 days). This figure is conservative since Plaintiff's meal period claims suggest that there were days that there were Putative Class Members who worked 10 or more hours (Complaint, ¶¶ 19, 60); however, Defendant only utilizes mere 8-hour work days for the purposes of this CAFA removal penalty calculation.

32. **Plaintiff's Claims for Miscalculation of Overtime Rate, Rounding of Overtime/Punch Times, and Unfair Business Practices.** Since Defendant has

established that the purported amount in controversy clearly exceeds the $5,000,000 threshold for CAFA jurisdiction, the complicated calculus of estimating an amount in controversy for Plaintiff's causes of action 1 (failure to pay overtime – miscalculation of rate), 2 (failure to pay overtime – rounding), and 7 (unlawful business practices) is unnecessary. However, it should be noted that these claims would certainly increase the total amount in controversy in the paragraphs above and the paragraph below with respect to estimated attorneys' fees.

33. **Attorneys' Fees.** Plaintiff's Prayer for Relief seeks attorneys' fees. While Defendant asserts that Plaintiff should recover no attorneys' fees, even contested attorneys' fees are included in ascertaining the purported amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (stating that claims for attorneys' fees are included in the amount in controversy, regardless of whether such award is discretionary or mandatory). Courts have accepted 25% fee estimates for removal purposes. See, e.g., *In re Rite Aid Corp. Securities Lit.,* 396 F.3d 294, 303 (3d Cir. 2005) (noting a finding by the Federal Judicial Center of fees recoveries ranging from 27% to 30% for class actions resolved or settled over a four-year period); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, *3 (C.D. Cal. Feb. 2, 2012) (finding that in a CAFA removal, the defendant properly included attorneys' fees in the amount in controversy at 25% of the potential damage award); *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) (holding that in removal, defendant fairly estimated attorneys' fees as 25% of the compensatory damages); *Tompkins v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (granting CAFA removal, and holding that, for purposes of ascertaining the amount in controversy, 25% of the common fund of total damages was a "fair estimate of attorneys' fees").

34. Here, attorneys' fees would be based on 25% of total alleged (and contested) damages/penalties established thus far in the preceding paragraphs. The

aggregate amount, would, therefore, be $6,263,770 ($5,503,770 for meal and rest claims + $400,000 for wage statement claims + $360,000 for waiting time penalty claim), resulting in <u>at least</u> an additional $1,565,943 in controversy for attorneys' fees.

## **COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL**

35. Pursuant to 28 U.S.C. § 1446(a), Defendant attaches the Complaint and all documents served as **Exhibit A**. This is the only process, pleading, or order in the State Court's file that has been served on Defendant up to the date of filing this Notice of Removal.

36. In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Under Section 1446(b), "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise." Defendant was served with Plaintiffs' Complaint on July 20, 2017. Accordingly, this Notice is timely.

37. As required in 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to Plaintiff's attorney of record, and will promptly file a copy of this Notice of Removal with the Clerk for the Superior Court of the State of California in and for the County of Los Angeles.

Dated: August 21, 2017

DLA PIPER LLP (US)


By /s/ Katharine Liao
    MARIA C. RODRIGUEZ
    KATHARINE LIAO
    Attorneys for Defendant
    HAJOCA CORPORATION