1
2
3
4
5
6
7
8

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15

| | |
|---|---|
| JOSE TINOCO, an individual, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>HAJOCA CORPORATION,<br><br>                    Defendant. | Case No. CV 17-6187 FMO (ASx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

16      Having reviewed and considered all the briefing filed with respect to plaintiff's Amended

17  Motion for (1) Preliminary Approval of Class and Representative Action Settlement; (2)

18  Certification of the Class; and (3) Approval of Notice to the Class, (Dkt. 39, "Motion"), and the oral

19  argument presented at the hearing on October 25, 2018, the court concludes as follows.

20                                        **INTRODUCTION**

21      On July 10, 2017, Jose Tinoco ("Tinoco" or "plaintiff") filed a class action complaint against

22  Hajoca Corporation ("Hajoca" or "defendant") in Los Angeles County Superior Court, asserting

23  claims for violations of the California Labor Code and California Business and Professions Code

24  §§ 17200, et seq., ("UCL").  (See Dkt. 1-1, Complaint).  On August 21, 2017, defendant removed

25  the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (See Dkt. 1,

26  NOR at ¶ 5).  On October 31, 2017, plaintiff filed a First Amended Complaint ("FAC") asserting

27  claims for (1) failure to pay overtime - miscalculation of rate, Cal. Lab. Code §§ 218, 510; (2)

28  failure to pay overtime - rounding, Cal. Lab. Code §§ 218, 510, 1194; (3) failure to timely pay

wages upon termination, Cal. Lab. Code §§ 201-203; (4) failure to provide meal periods, Cal. Lab. Code §§ 512, 203; (5) failure to provide rest periods; (6) failure to furnish and maintain accurate payroll records; (7) violations of the UCL, Cal. Bus. & Prof. Code §§ 17200, et seq.; and (8) penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698, et seq. (See Dkt. 24, FAC).

The court held a preliminary approval hearing on September 6, 2018, noting several issues with the proposed settlement and denied plaintiff's initial motion without prejudice. (See Dkt. 35, Court's Order of September 6, 2018). Plaintiff then filed the instant Motion, (Dkt. 39), seeking approval of an amended settlement agreement. Following the hearing on the instant Motion, plaintiff filed the operative Second Amended Complaint ("SAC"), asserting an additional claim under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 216(b), (see Dkt. 42, SAC; Dkt. 43, Court's Order of October 25, 2018; Dkt. 39, Motion at 5), as well as the Second Amended Stipulation of Settlement and Release Between Plaintiff and Defendant ("Settlement Agreement"). (See Dkt. 46-1, Settlement Agreement).

Plaintiff seeks an order (1) certifying the proposed class for settlement purposes; (2) preliminarily approving the Settlement Agreement; (3) appointing Tinoco as class representative for settlement purposes only; (4) appointing the Koul Law Firm and Law Offices of Sahag Maharian II as class counsel for settlement purposes only; (5) appointing CPT Group ("CPT") as settlement administrator; (6) approving the notice documents and directing dissemination of the class notice; and (7) scheduling a final approval hearing. (See Dkt. 39, Motion at 5-6; Dkt. 39-6, Proposed Order at 2-3).

## BACKGROUND

This case arises from allegations that Hajoca failed to provide plaintiff and similarly situated employees all wages and overtime pay, and required off-duty meal and rest breaks. (See Dkt. 39, Motion at 1; Dkt. 42, SAC at ¶¶ 1-2, 4, 7). Plaintiff alleges that Hajoca "pay[s] a nondiscretionary 'profit sharing' bonus each year but fail[s] to retroactively increase the employee's 'regular rate' of pay for purposes of calculating overtime" and that it "utilized a time rounding system that regularly shaved time from Plaintiff's timecard." (Dkt. 42, SAC at ¶¶ 16-17). This conduct resulted

in a failure to pay all wages due, including overtime, in a timely manner upon termination.  (See id. at ¶ 18).  Plaintiff further alleges that Hajoca "prohibited its employees from taking timely and uninterrupted 30-minute minimum meal breaks and required rest breaks[.]"  (Id. at ¶ 19).  According to plaintiff, Hajoca also failed to furnish accurate wage statements.  (See id. at ¶ 21).

Following extensive negotiations over several months, including a formal mediation with mediator Jeffrey Krivis, Esq. ("Krivis"), the parties reached a settlement. (See Dkt. 39, Motion at 1; Dkt. 46-1, Amended Declaration of Nazo Koulloukian in Support of Preliminary Approval of Class Action Settlement ("Koulloukian Decl.") at ¶¶ 5-6).  The parties have defined the settlement class as "all current and former nonexempt hourly employees of Defendant who were employed in the State of California in any workweek in the Class Period [July 19, 2013 to the date of preliminary approval of the settlement], who have not opted out of the Settlement after the Notice Period and who are therefore in the Settlement Class that is certified for purposes of Settlement only, following entry of an Order by the Court."[1]  (Dkt. 46-1 Settlement Agreement at ¶ 15.e.; see Dkt. 39, Motion at 6).  The parties estimate there are 383 class members.  (See Dkt. 39, Motion at 6; Dkt. 46-1, Settlement Agreement at ¶ 7).

Pursuant to the settlement, Hajoca will pay a gross settlement amount of $1,440,000, which will be used to pay class claims, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), costs for claims administration, attorney's fees and costs, and a class representative service award.  (See Dkt. 46-1, Settlement Agreement at ¶¶ 15.m., 16). Pending court approval, the settlement provides for up to $432,000 (or 30% of the gross settlement amount), in attorney's fees, (see id. at ¶¶ 15.c., 17-18), an incentive payment to Tinoco of up to $5,000, (see id. at ¶ 19), and no more than $10,000 in settlement administration costs. (See id. at ¶ 23).  The parties propose that the settlement be administered by CPT.  (See id. at

---

[1]  Potential class members who do not timely opt out but who do not cash or accept payment from the settlement shall nonetheless be considered class members.  (See Dkt. 46-1, Settlement Agreement at ¶ 15.e.).

1   ¶ 15.f.).  Amounts not approved by the court will revert to the settlement fund.  (See id. at ¶¶ 18-

2   19).  The resulting net settlement amount will be used to pay class members.[2]

3                                    **LEGAL STANDARD**

4          "[I]n the context of a case in which the parties reach a settlement agreement prior to class

5   certification, courts must peruse the proposed compromise to ratify both the propriety of the

6   certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.

7   2003).

8   I.     CLASS CERTIFICATION.

9          At the preliminary approval stage, the court "may make either a preliminary determination

10  that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

11  as to the appropriateness of class certification."[3]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

12  *3 (S.D. Fla. 2010) (internal citation and footnote omitted); see also Sandoval v. Roadlink USA

13  Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521

14  U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement

15  purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  "A court

16  considering such a request should give the Rule 23 certification factors 'undiluted, even

17  heightened, attention in the settlement context.'"  Sandoval, 2011 WL 5443777, at *2 (quoting

18  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248).  "Such attention is of vital importance, for a court

19  asked to certify a settlement class will lack the opportunity, present when a case is litigated, to

20  adjust the class, informed by the proceedings as they unfold."  Amchem, 521 U.S. at 620, 117

21  S.Ct. at 2248.

22         A party seeking class certification must first demonstrate that: "(1) the class is so numerous

23  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

24  _____

25         [2]  The determination of each class member's proportionate share of the net settlement
    amount will be based on the total workweeks of all class members, the number of workweeks
26  worked by each settlement class member, and the number of settlement class members.  (See
    Dkt. 46-1, Settlement Agreement at ¶ 24).  Additionally, each former class member shall receive
27  an additional payment of $250 from the net settlement amount.  (See id.).

28         [3]  All "Rule" references are to the Federal Rules of Civil Procedure.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).  Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

1    (D) the likely difficulties in managing a class action.

2    Fed. R. Civ. P. 23(b)(1)-(3).

3    The party seeking class certification bears the burden of demonstrating that the proposed

4    class meets the requirements of Rule 23.  See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party

5    seeking class certification must affirmatively demonstrate his compliance with the Rule – that is,

6    he must be prepared to prove that there are in fact sufficiently numerous parties, common

7    questions of law or fact, etc.") (emphasis original).  However, courts need not consider the Rule

8    23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for

9    a manageable trial.  See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal.

10   2014) ("[B]ecause this certification of the Class is in connection with the Settlement rather than

11   litigation, the Court need not address any issues of manageability that may be presented by

12   certification of the class proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL

13   128232, *3 (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the Settlement,

14   for the Court to consider any potential trial manageability issues that might otherwise bear on the

15   propriety of class certification").

16   II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

17   Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled

18   . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)]

19   is the protection of th[e] class members, including the named plaintiffs, whose rights may not have

20   been given due regard by the negotiating parties."  Officers for Justice v. Civil Service Comm'n

21   of the City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  Accordingly, a district court

22   must determine whether a proposed class action settlement is "fundamentally fair, adequate, and

23   reasonable."  Staton, 327 F.3d at 959; see Fed. R. Civ. Proc. 23(e).  Whether to approve a class

24   action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. City

25   of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks and citation omitted).

26   "If the [settlement] proposal would bind class members, the court may approve it only after

27   a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

28   "[S]ettlement approval that takes place prior to formal class certification requires a higher standard

of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

Approval of a class action settlement requires a two-step process – a preliminary approval followed by a later final approval. See Tijero v. Aaron Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval." Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Id. (internal quotation marks omitted); see Harris, 2011 WL 1627973, at *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments

of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.   CLASS CERTIFICATION.

    A.   Rule 23(a) Requirements.

        1.   **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical[.]" Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers."  See Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

Here, the class is so numerous that joinder is impracticable.  The settlement class includes 383 members, (see Dkt. 46-1, Settlement Agreement at ¶ 7), which easily exceeds the minimum threshold for numerosity.

        2.   **Commonality**.

The commonality requirement is satisfied if "there are common questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or

fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Mazza, 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide issues that are apt to drive the resolution of plaintiff's claims. The common questions include, among others: whether defendant was required to include the amount of profit sharing bonuses in the calculation of a class member's regular rate of pay; whether defendant improperly rounded employees' time entries; whether class members were provided with timely meal and break periods; and whether class members were entitled to compensation for off-the-clock work which derived from missed meal periods. (See Dkt. 39, Motion at 16-20, 27); see, e.g., Clesceri v. Beach City Investigations & Protective Services, Inc., 2011 WL 320998, *5 (C.D. Cal. 2011) (finding commonality requirement met for preliminary approval because "the settlement class members did not receive proper rest breaks; [] the settlement class members did not receive proper meal breaks; [] the settlement class members did not receive adequate wage statements in compliance").

### 3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the

class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the named plaintiff are typical of the claims of the class.  Plaintiff, like the class members he seeks to represent, was employed by defendant in an hourly, non-exempt position during the relevant time period, and his claims arise from the same factual basis and are based on the same legal theories, i.e., defendant violated plaintiff's rights under state and federal law by failing to pay him appropriately and provide legally required meal and rest breaks.  (See Dkt. 39, Motion at 27-28).  Finally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

4.   **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

Here, the proposed class representative does not appear to have any conflicts of interest with the absent class members.  (See Dkt. 39-3, Declaration of Plaintiff Jose Tinoco ("Tinoco Decl.") at ¶ 9) (Tinoco stating that he has "no interests that are antagonistic to [his] coworkers with respect to the claims alleged in this case" and that he agreed to act as a class representative knowing that he would have to "put the interest of the class members ahead of [his] own.").  The class representative has no individual claims separate from the class claims.  (See, generally, Dkt. 42, SAC).  In short, "[t]he adequacy-of-representation requirement is met here because Plaintiff[]

[has] the same interests as the absent Class Members[.] Further, there is no apparent conflict of interest between the named Plaintiff['s] claims and those of the other Class Members' – particularly because the named Plaintiff[] ha[s] no separate and individual claims apart from the Class." Barbosa v. Cargill Meat Solutions Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

Finally, the court is satisfied that plaintiff's counsel are competent and willing to prosecute this action vigorously. Plaintiff requests, and the Settlement Agreement provides, that the court appoint Nazo Koulloukian ("Koulloukian") of the Koul Law Firm and Sahag Majarian, II ("Majarian") of the Law Offices of Sahag Maharian II as class counsel. (See Dkt. 46-1, Settlement Agreement at ¶ 15.i. (defining class counsel); Dkt. 39-6, Proposed Order at 2). Koulloukian states that he has focused on "employment and related litigation[,]" including "wage and hour class action litigation[,]" (Dkt. 46, Koulloukian Decl. at ¶ 22), and that "[c]urrently, more than half of [his] active caseload includes wage and hour class action cases." (Id. at ¶ 23). Majarian states that he has "devoted a significant portion of [his] practice to employment law and class actions, and [has] been appointed co-class counsel for the plaintiffs in no less than 50 wage and hour class actions." (Dkt. 39-2, Declaration of Sahag Majarian II ("Majarian Decl.") at ¶ 2). Based on counsel's representations, and having observed their diligence in litigating this case, the court finds that plaintiff's counsel are competent, and that the adequacy of representation requirement is satisfied. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

### 1.    **Predominance**.

"The Rule 23(b)(3) predominance inquiry tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623, 117 S.Ct. at 2249.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022 (internal quotation marks and citations omitted); <u>see</u> <u>In re Wells Fargo Home Mortg.</u> <u>Overtime Pay Litig.</u>, 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues.").  Additionally, the class damages must be sufficiently traceable to plaintiffs' liability case.  <u>See</u> <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

Here, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation." <u>Hanlon</u>, 150 F.3d at 1022.  As discussed above, <u>see</u> <u>supra</u> at § I.A.2., there are common questions regarding defendant's employment policies which could establish defendant's liability on a class-wide basis.  (<u>See</u> Dkt. 39, Motion at 29).  The common questions include, among others:  whether defendant was required to include the amount of profit sharing bonuses in the calculation of the class members' regular rate of pay; whether defendant improperly rounded employees' time entries; whether the class members were provided with timely break and meal periods; and whether class members were entitled to compensation for off-the-clock work which derived from missed meal periods.  (<u>See</u> <u>also</u> Dkt. 39, Motion at 16-20, 27).  The answers to these questions would drive the resolution of the litigation, "despite the existence of minor factual differences between the potential class members, as the common issues predominate over varying factual predicates, such as number of hours worked under the allegedly unlawful workplace policies." <u>Clesceri</u>, 2011 WL 320998, at *5 (internal quotation marks omitted).  In short, there are several common questions that predominate over all others in this litigation.  <u>See</u> <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action

may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted).

2.     **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444. Here, plaintiff does not assert any claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member. (See, generally, Dkt. 42, SAC). The alternative method of resolution – pursing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action."). In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy

already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation[.]"  Newberg on Class Actions, § 4:70 at p. 277 (5th ed.) (emphasis omitted).  Here, the parties have not directed the court to, and the court is otherwise unaware of, any related pending litigation.  (See, generally, Dkt. 39, Motion).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citation omitted).

The only factors in play here weigh in favor of class treatment.  Further, the filing of separate suits by hundreds of other class members "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.[4]

/ / /

/ / /

---

[4]  The court also finds that the FLSA collective should be preliminarily certified.  See, e.g., Campbell v. City of Los Angeles, 903 F.3d 1090, 1109 (9th Cir. 2018) ("Preliminary certification . . . refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)."); Genesis Healthcare Corp. v. Symczyk, 599 U.S. 66, 75, 133 S.Ct. 1523, 1530 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court, § 216(b).") (internal citation omitted).

14

II. **FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.**

A. The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. (internal quotation marks omitted). When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption that the settlement is fair and reasonable. See Spann, 314 F.R.D. at 324 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (internal citation omitted); In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

Here, the parties engaged in "extensive" discovery and investigation, resulting in defendant producing "complete and voluminous time punch and payroll documents" and other "relevant company documents[.]" (Dkt. 46, Koulloukian Decl. at ¶ 10; see Dkt. 39, Motion at 1-2). Plaintiff's counsel analyzed defendant's records with the assistance of an expert. (See id.). The parties also participated in an all-day mediation presided over by an experienced mediator of employment class and PAGA representative actions, and engaged in "arms-length" negotiations. (See Dkt. 46, Koulloukian Decl. at ¶ 6; Dkt. 39, Motion at 23). Based on plaintiff's counsel diligent investigation of the case, plaintiff's counsel concluded that the "settlement terms represent a compromise of the parties' disputes and are fair, adequate and reasonable to the class given the risks that both sides faced in the litigation." (Dkt. 46, Koulloukian Decl. at ¶¶ 8-9).

In short, the court is persuaded that the parties thoroughly investigated and considered their

own and the opposing party's positions.  The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

        B.      The Amount Offered In Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

             1.    **Recovery for Class Members.**

As described above, the class members will share in a non-reversionary gross settlement amount of $1,440,000.00.  (See Dkt. 46-1, Settlement Agreement at ¶¶ 15.m., 16, 18-19).  While this amount represents a significant reduction from the estimated damages, (see Dkt. 46, Koulloukian Decl. at ¶¶ 13-14; Dkt. 39, Motion at 16-20), plaintiff's counsel determined that the settlement amount was fair and reasonable in light of the many litigation risks, including the company's defenses.  (See Dkt. 46, Koulloukian Decl. at ¶¶ 15-19; Dkt. 39, Motion at 25).  For instance, with respect to the overtime miscalculation claim, defendant produced evidence that the profit sharing was discretionary, and there was no formula for how each manager allocated profit shares to his or her employees.  (See Dkt. 39, Motion at 16-17); see, e.g., 29 U.S.C. § 207(e)(3) (excluded from regular rate of pay are "sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly").  Additionally, with respect to the rounding claim, plaintiff's analysis of the records produced by defendant indicates that only a handful of locations used rounding and "that such locations maintained a neutral rounding practice."  (Dkt. 39, Motion at 17); see See's Candy Shops, Inc. v. Sup. Ct., 210 Cal.App.4th 889, 907 (2012) ("[T]he rule in California is that an employer is entitled to use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.") (internal quotation marks omitted); Corbin v. Time Warner Entm't-Advance/Newhouse P'ship, 821 F.3d

1069, 1078 (9th Cir. 2016) (following See's Candy).   Moreover, the settlement promotes

enforcement of wage and hour laws in that it provides for recovery for plaintiff's PAGA claim. (See

Dkt. 46-1, Settlement Agreement at ¶¶ 15.m.-n., 16-17).

Under the circumstances, the court finds the settlement is fair, reasonable, and adequate,

particularly when viewed in light of the litigation risks in this case.   Even putting aside defendant's

defenses and, assuming class certification was granted and upheld on appeal, defeating summary

judgment, winning the case at trial, and then sustaining the final judgment on appeal would be very

difficult.   In short, the risks of continued litigation are significant, and the court takes these real

risks into account.   Weighed against those risks, and coupled with the delays associated with

continued litigation, the court is persuaded that the benefits to the class fall within the range of

reasonableness.   See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)

(ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential

recovery, which, given the difficulties in proving the case, [was] fair and adequate"); In re Uber,

2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth

7.5% or less of the expected value); Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th

Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential

recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

should be disapproved.") (internal quotation marks omitted).

2.   **Release of Claims**.

The court also considers whether a class action settlement contains an overly broad

release of liability.   See Newberg on Class Actions § 13:15 at p. 326 (5th ed.) ("Beyond the value

of the settlement, courts have rejected preliminary approval when the proposed settlement

contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g.,

Fraser v. Asus Computer Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary

approval of proposed settlement that provided defendant a "nationwide blanket release" in

exchange for payment "only on a claims-made basis," without the establishment of a settlement

fund or any other benefit to the class).

Here, class members who do not exclude themselves from the settlement and those who

opt in as to the FLSA claim will release defendant from all "Claims arising between July 19, 2013 and the date of preliminary approval of this Settlement related to the factual allegations in the Action[.]" (See Dkt. 46-1, Settlement Agreement at ¶¶ 15.v., 36, 41-43). The court finds that the release adequately balances fairness to plaintiff and the absent class members with defendant's business interest in ending this litigation. See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Agreement provides that plaintiff may apply to the court for a service award of $5,000 in "consideration for serving as the class representative and in exchange for executing a general release and agreement," (Dkt. 46-1, Settlement Agreement at ¶ 19), and that defendant will not oppose the request. (See id.). If the court approves a service payment of less than $5,000, "the unapproved portion shall be added" to the net settlement amount and "distributed to" settlement class members. (See id.).

Here, plaintiff took risks in agreeing to serve as the named plaintiff and "spent a significant amount of time" working on the litigation. (See Dkt. 39-3, Tinoco Decl. at ¶¶ 9-12). Thus, the court tentatively finds that a $5,000 service payment is appropriate. See Dyer v. Wells Fargo

Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable).

        D.    Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert. denied, 543 U.S. 818 (2004) (internal quotation marks omitted). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005); Low v. Trump University, LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing[.]" Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001), disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269 (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms. See In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice

1   under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed

2   settlement and of their options.").

3          Here, the parties request that CPT be appointed as claims administrator.  (See Dkt. 46-1,

4   Settlement Agreement at ¶ 15.f.).  Class members will receive notice by first class mail, (see Dkt.

5   46-1, Settlement Agreement at ¶ 34), which will consist of the Notice of Proposed Class Action

6   Settlement, (see Dkt. 46-1, Exh. 1, "Notice" at ECF 854-58), and a FLSA Opt-In Form, (see Dkt.

7   46-1, Exh. 1, "Opt-In Form" at ECF 859-65), (collectively, "Notice Packet").  The Notice describes

8   the nature of the action and sets forth the definition of the class.  (See Dkt. 46-1, Exh. 1, Notice

9   at ECF 854-55); see also Fed. R. Civ. P. 23(c)(2)(B).  It explains the terms of the settlement,

10  including the settlement amount, the distribution of that amount, and the release.  (See Dkt. 46-1,

11  Exh. 1, Notice at ECF 855-57).  It includes an explanation that lays out the class members' options

12  under the settlement: they may remain in the class and/or opt in to the FLSA claim, object to the

13  settlement but still remain in the class, or exclude themselves from the settlement and pursue their

14  claims separately against defendant.  (See id. at ECF 854-55, 857-58); see also Fed. R. Civ. P.

15  23(c)(2)(B)(v)-(vi). Finally, the Notice provides information about the Final Fairness Hearing.  (See

16  id.).

17         Based on the foregoing, the court finds there is no alternative method of distribution that

18  would be more practicable here, or any more reasonably likely to notify the class members.  Under

19  the circumstances, the court finds that the procedure for providing notice and the content of the

20  class notice constitute the best practicable notice to class members and  complies with the

21  requirements of due process.

22         E.    Summary.

23         The court's preliminary evaluation of the Settlement Agreement does not disclose grounds

24  to doubt its fairness "such as unduly preferential treatment of class representatives or segments

25  of the class, inadequate compensation or harms to the classes, . . . or excessive compensation

26  for attorneys[.]"  Manual for Complex Litigation § 21.632 (4th ed. 2004); see also Spann, 314

27  F.R.D. at 323.

28

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Amended Motion for (1) Preliminary Approval of Class and Representative Action Settlement and (2) Certification of the Class; and (3) Approval of Notice to the Class **(Document No. 39)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the class, as defined in ¶ 15.e. of the Second Amended Stipulation of Settlement and Release Between Plaintiff and Defendant ("Settlement Agreement") (Dkt. 46-1) for the purposes of settlement.

3.  The court preliminarily appoints plaintiff Jose Tinoco as class representative for settlement purposes.

4.  The court preliminarily appoints the Koul Law Firm and the Law Offices of Sahag Maharian II as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the Notice Packet, (Dkt. 46-1, Exh. 1 at ECF 854-865).  The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  CPT shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **July 17, 2019**.[5]

8.  Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **August 16, 2019,** and notice it for hearing for the date of the final approval hearing set forth below.

9.  Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; (b) exclude him or herself from the settlement; and/or

---

[5]  The court finds that defendant should be able to provide the class list to CPT well in advance of this deadline.

(c) opt in to the FLSA collective action must file his or her objection to the settlement, request for exclusion, or FLSA Opt-In Form no later than **September 17, 2019**, in accordance with the Notice.

10. Plaintiff shall, no later than **October 3, 2019,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.   Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **October 19, 2019**.

12.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive award, shall, no later than **October 10, 2019**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.   A final approval (fairness) hearing is hereby set for **October 24, 2019,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and service award to the class representative.

14.   All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 18th day of June, 2019.


_____
/s/
Fernando M. Olguin
United States District Judge