Nazo Koulloukian, SBN 263809
nazo@koullaw.com
KOUL LAW FIRM
A Professional Law Corporation
3435 Wilshire Blvd., Suite 1710
Los Angeles, CA 90010
Telephone: (213) 761-5484
Facsimile: (818) 561-3938

Sahag Majarian, II, Esq. SBN 146621
Sahagii@aol.com
LAW OFFICES OF SAHAG MAJARIAN II
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone:  (818) 609-0807
Facsimile:  (818) 609-0892

Attorney for Plaintiff,
JOSE TINOCO and all putative class members

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TINOCO, an individual, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br><br>vs.<br><br>HAJOCA CORPORATION, a professional corporation, and DOES 1-50, inclusive,<br><br>                       Defendants.<br>_____ | Case No.:  2:17-CV-06187 FMO (ASx)<br><br>(Judge:  Hon. Fernando M. Olguin)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>    Date:        November 7, 2019<br>    Time:       10:00 a.m.<br>    Dept:      6D<br><br>Filing Date: July 19, 2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on November 7, 2019, at 10:00 a.m. or as soon thereafter as the matter can be heard in courtroom 6D in the above entitled courthouse located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Plaintiff Jose Tinoco ("Plaintiff"), in his own behalf, and on behalf of the putative class ("Class"), will move the Court for final approval of class action settlement.

This motion is based upon this Notice, the Memorandum of Points and Authorities attached hereto; the declarations of Nazo Koulloukian and Sahag Majarian and all exhibits attached thereto; the previously filed and concurrently heard motion for attorneys' fees, costs, and plaintiffs' enhancement award; and all other records, pleadings, and other papers filed in this action; and upon such other documentary and verbal evidence or argument as may be presented to the Court at the hearing of this motion.

DATED: October 17, 2019          KOUL LAW FIRM

                                 LAW OFFICES OF SAHAG MAJARIAN II


                                 By:_/s/ Nazo L. Koulloukian_____
                                 Nazo L. Koulloukian
                                 Sahag Majarian II
                                 Attorneys for Plaintiff, JOSE TINOCO, and
                                 all putative class members

---

## TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................6

  A. Procedural History.................................................6

  B. Extensive Discovery and Informed Negotiation ...............7

III.  DISCOVERY AND INVESTIGATION ..............................8

  A. The Settlement is Fair, Reasonable, and Adequate...............9

II.  SETTLEMENT ...............................................................10

  A. Settlement Negotiations ........................................10

  B. Definition of the Proposed Class................................10

  C. Settlement Terms.................................................11

    1. Gross Settlement Amount................................11

    2. Net Settlement Amount ..................................13

    3. Administration of the Settlement to Class Members ...................13

    4. Limited Scope of Class Member Release.....................14

IV.  STATUS OF THE CLAIMS PROCEDURE....................................14

V.  FINAL APPROVAL IS APPROPRIATE ...........................................16

  A. Settlement Achieved Through Arms-Length Negotiations . ..............16

  B. Settlement Negotiations Supported by Sufficient Investigation and Discovery.................................................17

  C. Counsel Has Extensive Experience................................19

  D. No Class Members Have Objected .................................19

IX.  CONCLUSION ................................................................20

## TABLE OF AUTHORITIES

**Federal Cases:**

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004)- 19

*Eisen v. Carlisle & Jacquelin*,  417 U.S. 156, 174-175 (1974)----------------------- 14

*In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 221-22 (5th Cir. 1981) 14

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*
   *(FACTA) Litig*., 295 F.R.D. 438, 456 (C.D. Cal. 2014) --------------------------- 19

*Moreno v. Autozone, Inc.,* No. C05-04432 MJJ, 2007 WL 1650942, at *3 (N.D.
   Cal. June 5, 2007)------------------------------------------------------------------ 12

Nordstrom Com. Cases, 186 Cal. App. 4th at 581 ----------------------------------- 16

*Phillips Petroleum Co. v. Shutts*,  472 U.S. 797, 811-12 (1985) --------------------- 14

*Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002). ----------9, 17

*TBK Partners, Ltd. V. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982) ---------14


**State Cases:**

*Amaral v. Cintas Corp. No., 2* 163 Cal.App.4th 1157, 1213 (2008)----------------- 12

*Cellphone Termination Fee Cases*, 180 Cal. App. 4th at 1117-1118 (2011) ------- 16

*Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) ----------------- 16

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 131-33 (2008) -------9,17

*Mallick v. Superior Court*, 89 Cal.App.3d 434, 438 (1979) ------------------------- 16

*Rebney v. Wells Fargo Bank,* 220 Cal.App.3d 1117, 1138 (1990)------------------- 16

State v. Levi Strauss & Co., 41 Cal. 3d 460, 482 (1986)------------------------------ 16

## STATUTES

Bus. & Prof. Code § 17200, *et seq*. ------------------------------------------------- 7

Cal. Lab. Code § 207-------------------------------------------------------------------- 7

Cal. Lab. Code §218 --------------------------------------------------------------- 7

Cal. Lab. Code §226(e)(2)(B)(i)-------------------------------------------------- 7

Cal. Lab. Code §226.7 ------------------------------------------------------------ 7

Cal. Lab. Code §510 --------------------------------------------------------------- 7

Cal. Lab. Code §1174-------------------------------------------------------------- 7

Cal. Lab. Code §1194-------------------------------------------------------------- 7

Cal. Code Civ. P. § 877.6 -------------------------------------------------------15

Cal. Lab. Code §2699(e)(2) ----------------------------------------------------- 12

Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)-------------------------- 7

Fair Labor Standards Act ("FLSA") 29 U.S.C. §216(b) -------------------------7, 10

<u>TREATISES</u>

Alba Conte & Herbert Newberg, *Newberg on Class Actions* §12:15 (4th ed. 2002)

------------------------------------------------------------------------------14

<u>REGULATIONS</u>

IWC Wage Order § (3)(A)(1)----------------------------------------------------- 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      INTRODUCTION

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of this Class and Representative Action Settlement. This Court granted preliminary approval of the $1,440,000 settlement on June 18, 2019.  Since then, the Parties have worked closely with the court appointed Claims Administrator, CPT Group, Inc., to disseminate the required notice in both English and Spanish. The Notice Packet was mailed to 493 Class Members. (Declaration of Daniel P. La "La Decl." ¶4-8 and exhibits A & B thereto.) No Class Members have disputed, objected, or requested to be excluded from the Settlement. (La Decl. ¶ 13-15.) A total of 493 Class Members will be participating in this Settlement, a full 100% participation rate, with the highest payment estimated to be $4,340.30 and the average payment estimated to be $1,959.16. (La Decl. ¶13-17.) This is a substantial recovery by any measure, but especially for these Class Members, who are hourly employees averaging $18.23 per hour. (Koulloukian Decl. ¶9.)

Defendant Hajoca Corporation is a company doing business in California and other states, providing plumbing, heating, and industrial supplies. Plaintiff Jose Tinoco worked as a driver for Defendant for seven (7) years until January 16, 2017. Plaintiff brought this action on a class and representative basis for failure to pay all overtime wages owed, meal and rest break violations, waiting time penalties, unlawful business practices, and payroll record violations under federal and state laws.

### A.      Procedural History

This action was filed on July 19, 2017, as a class and representative action in Los Angeles Superior Court, Case No. BC669091. On August 21, 2017, Defendant

removed the action to the U.S. District Court for the Central District of California pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), where it is currently pending. (Dkt. 1.) Plaintiff filed a First Amended Complaint on October 31, 2017 ("FAC"). (Dkt. 24.)

The FAC alleged eight causes of action: (1) Failure to pay overtime, including due to miscalculating the overtime rate by omitting certain incentive compensation (Cal. Lab. Code ("LC") §§ 207, 218, 510, 1194, and IWC Wage Order § (3)(A)(1)); (2) Failure to pay overtime due to timecard rounding (LC §§ 218, 510, 1194, IWC Wage Order § (3)(A)(1)); (3) Failure to pay final compensation on a timely basis and waiting time penalties (LC §§ 201, 202, 203); (4) Failure to provide meal periods (LC §§ 226(e)(2)(B)(i), 226.7, and 512, and applicable IWC Wage Order); (5) Failure to provide rest breaks (LC §§ 226(e)(2)(B)(i), 226.7, and 512, and applicable IWC Wage Order); (6) Failure to maintain and provide accurate wage statements (LC §§ 226(a) *et seq.*, 1174); (7) Unlawful business practices § 17200 ("UCL") (Bus. & Prof. Code § 17200, *et seq*.); (8) Violation of PAGA. On October 26, 2018 Plaintiff filed the operative Second Amended Complaint, adding a claim under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §216(b). (Dkt 42.) The parties again revisited and renegotiated settlement terms and drafted and filed a Second Amended Settlement Agreement. (Dkt. 46.)

## B.    Extensive Discovery and Informed Negotiation

This Settlement was achieved following extensive negotiations over several months, including a formal, private mediation under the supervision of a respected mediator, Jeffrey Krivis, Esq., who is experienced in employment class and PAGA representative actions. Prior to the mediation, in response to extensive meet and confer communications and written informal discovery requests, Defendants produced a massive amount of sampling wage, hour, and other records maintained by Defendant for the potential Class Members and other current and former

employees.  Plaintiff, with the assistance of a retained expert, conducted a thorough analysis of Defendant's records, including 8,494 individual shifts, developing numerous data points, and using sophisticated analytical techniques to identify the potential damages, as described below.  (Koulloukian Decl. ¶9-11.) The parties have agreed to a $1,440,000.00 non-reversionary settlement upon the terms and conditions set forth in the executed Settlement Agreement. The Class Period is from July 19, 2013 to the date of preliminary approval of the settlement and includes 493 employees, earning an average hourly rate of $18.23. (La Decl. ¶8, 13-15.)

CPT Group, Inc. ("Settlement Administrator") has provided notice to the Class pursuant to the terms and conditions of the Settlement Agreement. Class Notice Packets were mailed via U.S. First-Class mail to all Settlement Class Members on July 17, 2019. (La Decl. ¶7.)  No disputes, written objections, or requests for exclusion have been made to the settlement. Therefore, every one of the 493 Class Members will be participating in the Settlement, which represents a 100% participation rate. (La Decl. ¶13-15.)

## III.   DISCOVERY AND INVESTIGATION

Discovery and investigation undertaken by Plaintiffs was extensive. Defendants produced a 20% representative sample of time punch and payroll documents, in addition to relevant company policy documents for review. Class Counsel invested significant time reviewing these documents and, with the assistance of a retained expert, analyzing the time records and pay statements to determine Defendants' potential damage exposure. This was necessary to evaluate the risks for liability on the amount of underpaid wages owed, as well as damages data for the Class, which was used to calculate damages exposure and payment allocation.  (Koulloukian Decl., ¶¶ 10-11, 29.)

After analysis of the responsive discovery as well as other gathered data, and believing that this case was appropriate for consensual resolution given the high level of risk present for both sides, the Parties agreed to attend mediation. (Koulloukian Decl. ¶11.) Leading up to the mediation, the Parties engaged in further in-depth informal discussions. The mediation lasted a full day and concluded in a settlement in principle. The parties then engaged in extensive negotiations concerning the terms of the long-form settlement agreement.

Plaintiffs have obtained detailed discovery on both liability and damages. This information allowed Plaintiffs to provide this Court sufficient evidence to determine adequacy of the settlement, ultimately resulting in preliminary approval of the settlement. *Kullar v. Foot Locker Retail, Inc*., 168 Cal. App. 4th 116, 131-33 (2008); *Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002).

## A.     The Settlement is Fair, Reasonable, and Adequate

Based on their own independent investigations and evaluations, the Parties and their counsel are of the opinion that the "all-in", non-reversionary settlement set forth in the Agreement, from which class members may exclude themselves, is fair, reasonable, and adequate and is in the best interests of Class Members and the Defendants in light of all known facts and circumstances and the expenses and risks inherent in litigation. Defendants deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiffs and further denies that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment.

///

///

///

///

## II.     SETTLEMENT

### A.     Settlement Negotiations

The Parties participated in a full day of mediation before highly experienced mediator, Jeffrey Krivis, Esq, where they engaged in an intensive arms-length discussion regarding their respective evaluations of and relevant legal arguments. They reached an agreement in principle that day, which was the foundation for extensive negotiations of all settlement terms. (Koulloukian Decl. ¶12.)

Class Counsel then drafted and filed a Motion for Preliminary Approval, which came before this Court on September 6, 2018, and was denied without prejudice. The parties thoroughly analyzed feedback from the Court, renegotiated and amended the Settlement Agreement, drafted, and filed a second Motion for Preliminary Approval. Following the October 25, 2018 hearing on the second Motion for Preliminary Approval, the parties again analyzed the Court's feedback, renegotiated and amended the Settlement Agreement. Plaintiff drafted and filed a Second Amended Complaint, adding a claim under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §216(b), which is the operative complaint. (Dkt 42.) The parties again revisited and renegotiated settlement terms and drafted and filed a Second Amended Settlement Agreement. (Dkt. 46.)

The Amended Settlement Agreement was preliminarily approved by the Court on June 18, 2019 and is submitted concurrently herewith. (Dkt. 52; Koulloukian Decl. ¶¶6-7, 12-13; exhibit 1.)

### B.     Definition of the Proposed Class

The settlement class ("Class Members") means "All current and former nonexempt hourly employees of Defendant who were employed in the State of California in any workweek from July 19, 2013 to June 18, 2019, who have not

requested exclusion from the Settlement after the Notice Period and who are therefore in the Settlement Class that is certified for purposes of Settlement only, following entry of an Order by the Court." (La Decl., exhibit A, ¶A; Settlement ¶15e.)

The class consists of 493 putative class members, all of whom will be participating in the settlement and receiving a Settlement Payment, amounting to a 100% participation rate. (La Decl. ¶ 8, 11-15.) This is an "all in", non-reversionary settlement, wherein Class Members are automatically included unless they exclude themselves from participation. There are no objections, disputes, or exclusions. (La Decl. ¶13-15.)

## C.   Settlement Terms

The Parties have agreed to the following:

### 1.   Gross Settlement Amount

The Gross Settlement Amount shall be One Million Four Hundred Forty Thousand Dollars ($1,440,000.00). (Settlement ¶ 16.) Within fifteen (15) calendar days after the Effective Date, Defendant shall deposit the Gross Settlement Amount Maximum Settlement with the Claims Administrator. The Claims Administrator will use the Gross Settlement Amount to pay all items identified in the Settlement, including all settlement awards to Class Members, all state and federal taxes on behalf of the Class Members and Defendant, the LWDA Payment, Court approved attorneys' fees and attorneys' costs to Class Counsel, the claims administration fee to the claims administrator, and the service award to Plaintiff.  (Settlement ¶40.)

Participating Class Member Individual Settlement Payments

Class Members shall receive a proportionate share of the Net Settlement Amount ("NSA"), which will be based on the total Workweeks of all potential Class Members, the number of Workweeks worked by each Class Member, and the

number of Class Members, as appropriate. (Settlement ¶ 24.) In addition, each Class Member who is a former employee of Defendants as of the date of preliminary approval shall receive an additional payment of $250.00. *Id.*

For the purposes of tax treatment, the individual settlement payments will be allocated as 20% back wages, 30% non-wage interest, and 50% penalties or liquidated damages. The payroll deductions for the wage portion of the individual settlement payments will be calculated by the Claims Administrator, subtracted from the settlement payments, and paid to the appropriate government agencies. Defendant shall be responsible for the employer's share of the government payroll obligations, which Defendant will pay in addition to the Gross Settlement Amount. (Settlement ¶ 27.)

Attorneys' Fees and Expenses

The Court has preliminarily approved an award of Class Counsel's attorneys' fees up to one-third of the Gross Settlement Amount ($432,000). Plaintiff's motion for attorneys' fees and costs will be heard concurrently with this motion and seeks $432,000 in attorneys' fees in addition to $12,135.26 in actual costs.

Class Representative Service Award

The Parties seek final approval of a service award of $5,000 to Plaintiff Jose Tinoco to compensate him for the risks, time, and expense of involvement in the action and in consideration for his general release of all other claims as specified in the Settlement Agreement. (Settlement ¶19.)

LWDA Payment

The Parties have designated $20,000.00 for satisfaction of Plaintiffs' and Settlement Class members' claims pursuant to PAGA. Seventy-five percent (75%) of this amount, or $15,000.00, shall be deducted from the Gross Settlement Amount and paid to the LWDA, as mandated by Cal. Labor Code §2699(i). (Settlement ¶15.) "PAGA penalties...are mandatory, not discretionary" and must be awarded upon a showing that Defendant violated the Labor Code. *Amaral v. Cintas Corp. No. 2* 163

Cal.App.4th 1157, 1213 (2008); *Moreno v. Autozone, Inc.,* No. C05-04432 MJJ, 2007 WL 1650942, at *3 (N.D. Cal. June 5, 2007). However, PAGA does provide the Court with discretion when it awards the amount of penalties. Labor Code §2699(e)(2) states that "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."

### 2.     Net Settlement Amount

The "Net Settlement Amount" is the amount available for distribution after deducting attorneys' fees, costs, Settlement Administration Costs, payment to the LWDA, and Class Representative Service Awards. (Settlement ¶26.) Because this is an all-in, non-reversionary settlement, Participating Class Members automatically receive payment of their Individual Settlement Payments unless they submit a valid Request for Exclusion. Payments will be made to 493 participating Class Members and the Claims Administrator estimates that the highest payment will be $4,340.30 and the average payment will be $1,959.16. (La Decl. ¶¶15, 17.)

### 3.     Administration of the Settlement to Class Members

The Settlement Agreement requests that Notice be provided to the Settlement Class Members in a Notice Packet in both English and Spanish, informing Settlement Class members of the number of Eligible Workweeks applicable to them and their estimated Individual Settlement Payment. (La Decl. ¶ 4, Exhibits A & B.) The procedure for dissemination of the Notice Packet, as well as the procedure Class Members must follow to dispute the dates of employment, submit objections, and/or requests for exclusion from the Class, is explicitly and clearly articulated in the Notice. (La Decl. ¶4, Exhibit A.) Consistent with this requirement, Notice Packets

translated in both English and Spanish were mailed on July 17, 2019. (La Decl. ¶7.) Again, out of the 493 Class Members, there have been no objections, workweek disputes, or requests for exclusion. (La Decl. ¶ 13-15.) Additionally, 204 Class Members have voluntarily opted in for the optional release of the FLSA claim. (La Decl. ¶ 12.)

### 4.    Limited Scope of Class Member Release

The release of Class Members' claims is limited in scope to all claims arising between July 19, 2013 and preliminary approval "related to the factual allegations in the Action." (Settlement ¶ 15v, 41-43.) This is consistent with case law and limits the class release to those claims that were asserted in the Complaints or that may arise out of the facts pleaded in the Complaints. *See TBK Partners, Ltd. V. W. Union Corp.,* 675 F.2d 456, 460(2d Cir. 1982); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* §12:15 (4th ed. 2002), at 312 ("The scope of a judgment must be limited to the claims that were asserted or that may arise out of the transactions or events pleaded in the complaint…"); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 221-22 (5th Cir. 1981). Finally, there is no §1542 release of Participating Class Members' claims.

## IV.    STATUS OF THE CLAIMS PROCEDURE

To protect the right of absent class members, the trial court must provide the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-175 (1974). There is no requirement that all class members receive actual notice, whether by mail or some other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen*, 417 U.S. at 175.

---

On June 18, 2019, this Court preliminarily approved the Settlement, finding it to be fair, adequate and reasonable, and falling within the range of reasonableness. The Court also found that the language in the class notice packet ("Notice Packet") and class notice procedure as set forth in the Settlement Agreement was the best means practicable of providing notice under the circumstances, and constituted due and sufficient notice of the class action, proposed settlement, and the final approval hearing to all persons affected by and/or authorized to participate in the settlement, in full compliance with due process and the notice requirements of California Code of Civil Procedure § 877.6.

The Claims Administrator for the Settlement Agreement is CPT Group, Inc. On July 8, 2019, the Settlement Administrator received a data file from Defendant's Counsel that contained names, last known mailing addresses, Social Security numbers, and dates of employment for each Class Member during the Class Period. The list contained 466 Class Members. (La Decl., ¶ 5.)

On July 17, 2019, the Settlement Administrator conducted a National Change of Address (NCOA) search in an attempt to update the class list of addresses as accurately as possible. A search of this database provides updated addresses for any individual who has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address.  (La Decl. ¶ 6.)  On July 17, 2019, the notice packets were mailed via U.S. first class mail, in English and Spanish to all 493 Class Members on the Class List.  (La Decl. ¶ 7.)

After the initial mailing, Defense Counsel advised that 27 Class Members had been inadvertently excluded from the class list. Defense Counsel transmitted those data files to CPT. (La Decl. ¶8.) Notice packets were mailed September 5, 2019 to the additional 27 Class Members. (La Decl. ¶ 9.)

As of the date of CPT Group's declaration, 20 Notice Packets have been returned to the Claims Administrator.  CPT then attempted to locate a current mailing address using Accurint, one of the most comprehensive address databases

available for skip tracing. Accurint utilizes hundreds of different databases supplied by credit supporting agencies, public records, and a variety of other national databases. (La Decl. ¶10.)  19 Notice Packets were re-mailed via first class mail, with 7 returned as undeliverable.  (La Decl. ¶ 11.)

CPT has received 218 responses from Class Members: 204 to opt-in to the FLSA release, 11 duplicate responses, and 3 blank responses. (La Decl. ¶ 12.) Out of the total 493 Class Members, there have been no objections, workweek disputes, or requests for exclusion. (La Decl. ¶ 13-15.)

## V.    FINAL APPROVAL IS APPROPRIATE

The trial court has broad discretion to determine whether a proposed class action settlement is fair.  *Rebney v. Wells Fargo Bank,* 220 Cal.App.3d 1117, 1138 (1990); *Mallick v. Superior Court,* 89 Cal.App.3d 434, 438 (1979).  There is a presumption of fairness of a class action settlement when: 1) The settlement is reached as a result of arms-length negotiations; 2) There has been sufficient investigation and discovery; 3) Counsel is experienced in similar litigation; and, 4) the percentage of objectors is small.  *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996).

### A.    The Settlement Was Achieved Through Arms-Length Negotiations

"[W]hat transpires in settlement negotiations is highly relevant to the assessment of a proposed settlement's fairness." *State v. Levi Strauss & Co.*, 41 Cal. 3d 460, 482 (1986). Courts presume the absence of fraud or collusion in the negotiation of a settlement, unless evidence to the contrary is offered; thus, there is a presumption that settlement negotiations are conducted in good faith. *Nordstrom Com. Cases*, 186 Cal. App. 4th at 581, *quoting Cellphone Termination Fee Cases*, 180 Cal. App. 4th at 1117-1118 (2011).

There can be no doubt as to the fairness of the settlement before this Court. The parties arrived at this settlement through arm's length bargaining, following a full day of mediation. The parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also committed and prepared to litigate its position through trial and appeal if a settlement had not been reached. The proposed settlement was reached at the end of a lengthy, arms-length negotiation process, in which counsel for all parties advanced their respective positions throughout the settlement negotiations. (Koulloukian Decl. ¶¶6, 12-15.) The Settlement is fair, reasonable, and in the best interests of the class. (Koulloukian Decl., ¶¶14-15.)

**B.      Settlement     Negotiations     were     Supported     by     Sufficient Investigation and Discovery**

Prior to the entering into the Settlement, Class Counsel conducted an exhaustive investigation into the claims alleged by the Plaintiffs. Discovery and investigation included the review of voluminous time-keeping and related payroll records.  In particular, Class Counsel spent a significant time analyzing a significant representative sample of time punch and payroll records to determine the extent of liability and evaluate the case for settlement.  These records were reviewed and analyzed with the assistance of a retained expert.  (Koulloukian Decl. ¶¶11.) Based on these efforts, Class Counsel was able to act intelligently and effectively in negotiating the proposed settlement. Plaintiffs' extensive pre-mediation discovery and investigation allows Plaintiffs to provide this Court sufficient evidence to determine adequacy of the settlement. *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 131-33 (2008); *Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002).

As a result of the extensive investigation and discovery in this case, Plaintiffs' counsel have a thorough understanding of the practical and legal issues they would continue to face litigating this case. (Koulloukian Decl. ¶ 11, 12.), Plaintiffs face several serious challenges, and Defendant has mounted a vigorous defense. At mediation, Defendant presented a number of compelling arguments. For example, Defendant raised several defenses to Plaintiff's overtime miscalculation claim, always alleging that the bonuses were discretionary and not required to be factored into the calculation. Concerning Plaintiff's meal and rest break claims, Defendant argued that it properly provided employees with breaks, and that they were not required to police employees who chose to skip or take non-compliant breaks for their personal reasons. Further, rest break violations can be difficult to evidence, given that employees are not required to clock in and out for rest breaks. Defendant also intended to raise several defenses against class certification, including (1) that individualized determinations regarding the amount of overtime wages owing, if any, would overwhelm common issues; and (2) whether Class Members actually took meal and rest breaks would overwhelm any common issues. If Defendant succeeded on any of these or other defenses to class certification, Defendant would likely further argue that its success would necessarily impact Plaintiff's derivative claims.  In the end, Plaintiff would then be left with only individual claims and the Class and Collective would potentially recover nothing. This further demonstrates the reasonableness of the total settlement value and the risks of further litigation. (Koulloukian Decl. ¶ 12.)

These defenses, if successful, could severely reduce the damages and PAGA penalties recoverable by Class Members. (Koulloukian Decl. ¶12.) Additionally, Plaintiffs alleged claims asserting a violation of Labor Code Section 201-203 penalties, which are derivative since Plaintiffs asserts that wages, including overtime and penalty wages, were underpaid and thus remain unpaid to all separated class members. The challenge here is that Plaintiffs must establish that the failure to pay

at the time of separation was willful. Defendant has a potentially insurmountable argument that it had a good faith belief at the time of separation that it was not obligated to pay for any underpaid wages, and its failure to have done so was not willful.

Furthermore, while Plaintiffs alleged claims that the company is liable for civil penalties under PAGA, penalties are discretionary and, thus, uncertain. Given the uncertain nature of the underlying claims, the value of the claims under this statute are significantly lower. (Koulloukian Decl., ¶ 12).

Despite these hurdles, Plaintiff obtained a settlement fund of $1,440,000. Class Counsel's extensive investigation, discovery, and case analysis enabled Class Counsel to address the strengths and weaknesses of Plaintiff's case, discussed above, and utilize this understanding to negotiate for and arrive at a favorable settlement. By any reasonable measure, this recovery is a significant achievement given the significant obstacles Plaintiff faced in the litigation.

### C.    Counsel Has Extensive Experience

Class Counsel are experienced, respected members of the bar with strong records of vigorous and effective advocacy for their clients, and in handling complex wage and hour class action litigation. (Koulloukian Decl., ¶¶ 19-27.) Plaintiff and Class Counsel were prepared to litigate the claims in the action, but they supported the proposed settlement as being in the best interests of the proposed class. The qualifications of Class Counsel are described at length in their concurrently pending motion for attorneys' fees, costs, and plaintiff enhancement awards, and will be discussed in more detail therein.

### D.    No Class Members Have Objected

The response of class members is clearly indicative of the fairness of the settlement.  As set forth above, there were notices mailed out to 493 class members.

To date, <u>there have been no objections, no disputes, and no requests for exclusion</u> from the Settlement, yielding a 100% participation rate. (La Decl. ¶13-15.)  "The negligible number of opt-outs and objections indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming the approval of a class action settlement where 90,000 members received notice and 45 objections were received). The response to this settlement agreement is a strong indication of the fairness of the settlement.

## IX.    CONCLUSION

The Settlement Agreement is fair and reasonable and represents an excellent opportunity for the current and former employees of Defendant to obtain recovery for Defendant's alleged illegal wage and hour practices and avoid all of the future risks involved.  The 100% participation rate further evidences the fairness of the settlement agreement. Therefore, for the reasons set forth above and in the Settlement Agreement on file, Plaintiff respectfully request that his Motion for Final Approval of Class Action Settlement be granted.

DATED: October 17, 2019          KOUL LAW FIRM

LAW OFFICES OF SAHAG MAJARIAN II


By: /s/ Nazo L. Koulloukian_____
Nazo L. Koulloukian
Sahag Majarian II
Attorneys for Plaintiff,
JOSE TINOCO, and all putative class members

---