# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TINOCO, an individual, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>HAJOCA CORPORATION,<br><br>                Defendant. | Case No. CV 17-6187 FMO (ASx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered Plaintiff's Unopposed Motion for Final Approval of Settlement, (Dkt. 57, "Motion"), and Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and an Enhancement Award, (Dkt. 53, "Fees Motion"), and the oral argument presented during the final fairness hearing held on November 7, 2019, the court concludes as follows.

## BACKGROUND

This case arises from allegations that Hajoca Corporation ("Hajoca" or "defendant") failed to provide Jose Tinoco ("Tinoco" or "plaintiff") and similarly situated employees all wages and overtime pay, and required off-duty meal and rest breaks. (Dkt. 42, Second Amended Complaint ("SAC"); Dkt. 52, Court's Order of June 18, 2019 ("Preliminary Approval Order" or "PAO") at 2). Plaintiff alleges that Hajoca "pay[s] a nondiscretionary 'profit sharing' bonus each year but fail[s] to retroactively increase the employee's 'regular rate' of pay for purposes of calculating overtime"

and that it "utilized a time rounding system that regularly shaved time from Plaintiff's timecard." (Dkt. 42, SAC at ¶¶ 16-17). This conduct resulted in a failure to pay all wages due, including overtime, in a timely manner upon termination. (See id. at ¶ 18). Plaintiff also alleges that Hajoca "prohibited its employees from taking timely and uninterrupted 30-minute minimum meal breaks and required rest breaks[.]" (Id. at ¶ 19). According to plaintiff, Hajoca also failed to furnish accurate wage statements. (See id. at ¶ 21). The SAC, the operative complaint, asserts claims for: (1) failure to pay overtime - miscalculation of rate, Cal. Lab. Code §§ 218, 510; (2) failure to pay overtime - rounding, Cal. Lab. Code §§ 218, 510, 1194; (3) failure to timely pay wages upon termination, Cal. Lab. Code §§ 201-203; (4) failure to provide meal periods, Cal. Lab. Code §§ 512, 203; (5) failure to provide rest periods; (6) failure to furnish and maintain accurate payroll records; (7) violations of the California Business and Professions Code ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (8) penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, et seq.; and (9) violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 216(b). (See Dkt. 42, SAC at ¶¶ 34-105).

Following extensive negotiations over several months, including a formal mediation with mediator Jeffrey Krivis, Esq. ("Krivis"), the parties reached a settlement. (Dkt. 52, PAO at 3). The parties define the settlement class as "all current and former nonexempt hourly employees of Defendant who were employed in the State of California in any workweek in the Class Period [July 19, 2013 to the date of preliminary approval of the settlement], who have not opted out of the Settlement after the Notice Period and who are therefore in the Settlement Class that is certified for purposes of Settlement only, following entry of an Order by the Court." (Dkt. 46-1, Second Amended Stipulation of Settlement and Release Between Plaintiff and Defendant ("Settlement Agreement") at ¶ 15.e.; Dkt. 52, PAO at 3).

Pursuant to the settlement, Hajoca will pay a gross settlement amount of $1,440,000, which will be used to pay class claims, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), costs for claims administration, attorney's fees and costs, and a class representative service award. (See Dkt. 46-1, Settlement Agreement at ¶¶ 15.m., 16). Pending court approval, the settlement provides for up to $432,000 (or 30% of the gross

2

settlement amount), in attorney's fees, (see id. at ¶¶ 15.c., 17-18), an incentive payment to Tinoco of up to $5,000, (see id. at ¶ 19), and no more than $10,000 in settlement administration costs. (See id. at ¶ 23). Amounts not approved by the court will revert to the settlement fund. (See id. at ¶¶ 18-19). The resulting net settlement amount will be used to pay class members.[1]

On June 18, 2019, the court granted preliminary approval of the settlement, appointed CPT Group ("CPT") as the settlement administrator, and directed CPT to provide notice to class members. (See Dkt. 52, PAO at 21-22). After the court issued its Preliminary Approval Order, CPT implemented the notice program approved by the court. (See Dkt. 57, Motion at 8; Dkt. 57-2, Declaration of Daniel P. La with Respect to Notification and Settlement Administration ("La Decl.") at ¶¶ 4-12 & Exhs. A-B (Notice Packets); Dkt. 52, PAO at 19-20 (approving notice program)). Notice packets were sent to 493 class members.[2] (See Dkt. 57-2, La Decl. at ¶¶ 8-11). As of October 15, 2019, CPT had received no requests for exclusion and no objections. (Id. at ¶¶ 13, 15; see, generally, Dkt. (no objections filed with the court)). CPT received 204 FLSA Opt-In forms. (Dkt. 57-2, La Decl at ¶ 12).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 57, Motion; Dkt. 53, Fees Motion).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[3] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).

---

[1] The determination of each class member's proportionate share of the net settlement amount will be based on the total workweeks of all class members, the number of workweeks worked by each class member, and the number of settlement class members. (See Dkt. 46-1, Settlement Agreement at ¶ 24). Additionally, each former class member shall receive an additional payment of $250 from the net settlement amount. (See id.).

[2] Seven Notice Packets were ultimately undeliverable. (See Dkt. 57-2, La Decl. at ¶ 11).

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

3

Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019).  The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted).  "[T]he settlement must stand or fall as a whole." Officers for Justice, 688 F.2d at 630.

In order to approve a settlement in a class action, the court must conduct a two-step inquiry.[4]  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).  In determining whether a settlement is fair, reasonable, and adequate, the court must weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."[5]  In re Bluetooth Headset Prod. Liab.

---

[4]  If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met.  See 28 U.S.C. § 1715(d).  Here, CAFA notice was provided and no responses were received.

[5]  The 2018 amendments to Rule 23 provide further guidance for determining whether a settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).  The Advisory Committee notes state that "[t]he goal of [the] amendment [was] not to displace any factor" that courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Adv. Comm. Notes to Amendments to Rule 23.  The court addressed several of the factors set forth in the amended Rule 23(e) during the

Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)); Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).[6]

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight [] factors alone is not enough[.]" Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). Thus, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Bluetooth, 654 F.3d at 946. In assessing such an agreement, courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[7] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. at 947 (internal quotation marks and citations omitted).

---

preliminary approval process. (See Dkt. 52, PAO at 15-16 (considering whether the settlement was the product of arm's-length negotiations); id. at 16-18 (addressing whether recovery for the class is fair, adequate, and reasonable)). In evaluating the settlement, the court will consider the factors set forth by the Ninth Circuit, while also taking into account the Rule 23 amendments.

[6] Although the settlement approval in Campbell occurred prior to the 2018 amendment to Rule 23(e)(2), the Ninth Circuit noted that applying the amendment would not change its conclusions affirming the district court's approval of the settlement. See Campbell, 951 F.3d at 1121 n. 10 (quoting advisory committee's note to 2018 amendment).

[7] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6.

**DISCUSSION**

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

    A.    <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (<u>See</u> Dkt. 52, PAO at 8-14, 21).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).[8]  <u>See</u>, <u>e.g.</u>, <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B.    <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice.  (<u>See</u> Dkt. 52, PAO at 19-21).  As discussed above, the notice program was implemented by CPT.  (Dkt. 57-2, La Decl. at ¶¶ 4-12 & Exhs. A-B (Notice Packets)).  Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.  (<u>See</u> Dkt. 52, PAO at 19-20; Dkt. 57-2, La Decl. at ¶¶ 4-12 & Exhs. A-B (Notice Packets)).

---

[8] The court also preliminarily certified the FLSA collective, (<u>see</u> Dkt. 52, PAO at 14 n. 4), and sees no need to disturb that determination.

    C.    <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.

           1.    **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F.Supp.2d. 964, 975 (E.D. Cal. 2012) (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." <u>Id.</u> at 976.

Here, in granting preliminary approval of the settlement, the court recognized that the "risks of continued litigation [were] significant" and when "[w]eighed against those risks" and the "delays associated with continued litigation," the "benefits to the class" were within the range of reasonableness. (<u>See</u> Dkt. 52, PAO at 17). Settlement affords class members immediate monetary benefits in the face of various defenses to plaintiff's claims and substantial delay. (<u>See</u> <u>id.</u> at 16-17; Dkt. 57, Motion at 18-19). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that these factors support approval of the settlement.

           2.    **The Risk of Maintaining Class Action Status Through Trial**.

Because the parties reached settlement prior to the filing of a motion for class certification, plaintiff faced a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement as fair, adequate, and reasonable. <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 966 (9th Cir. 2009) ("At the time of settlement, the risk remained that the nationwide class might be decertified[.]"); <u>Rosado v. Ebay Inc.</u>, 2016 WL 3401987, *4 (N.D. Cal. 2016) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

### 3. **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval, the court concluded that although the settlement amount represented a "significant reduction from the estimated damages," the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 52, PAO at 16-18); see also Linney, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Extent of Discovery Completed and the Stage of Proceedings**.

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Spann v. J.C. Penney Corp., 211 F.Supp.3d 1244, 1256 (C.D. Cal. 2016) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 527). The court previously examined these factors at length, noting that the parties had engaged in "'extensive' discovery and investigation[,]" (see Dkt. 52, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id. at 15-16), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id. at 16). In other words, "the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." Spann, 211 F.Supp.3d at 1256; Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

### 5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Spann, 211 F.Supp.3d at 1257 (quoting Nat'l Rural Telecomms., 221 F.R.D. at 528); see also Fed. R. Civ. P. 23(e)(2)(A) (courts should consider whether "class counsel have adequately represented the class").[9] Here, class counsel, who adequately represented the class, (see Dkt. 52, PAO at 11), view the settlement as "fair, reasonable, and in the best interests of the class." (Dkt. 57, Motion at 17; Dkt. 57-1, Declaration of Nazo Koulloukian in Support of Plaintiffs' [sic] Unopposed Motion for Final Approval ("Koulloukian Decl.") at ¶ 15). Thus, this factor also supports approval of the settlement.

### 6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Spann, 211 F.Supp.3d at 1257 (concluding "[t]here is no government participant in this matter[,]" rendering "this factor [] not relevant.").

### 7. **The Reaction of Class Members to the Proposed Settlement**.

The absence of a large number of objections and exclusions to a proposed class action settlement supports approval of a settlement. See Spann, 211 F.Supp.3d at 1257 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Here, the reaction of the class has been very positive. Significantly, there have been no requests for exclusion and no objections. (See Dkt. 57-2, La Decl. at ¶¶ 13, 15; see, generally, Dkt. (no objections filed with the court)). The lack of objections and requests for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16

---

[9] In its Preliminary Approval Order, the court found that plaintiff was an adequate class representative. (See Dkt. 52, PAO at 10-11); Fed. R. Civ. P. 23(e)(2)(A) (in approving class action settlements courts should consider whether "the class representatives . . . have adequately represented the class").

(E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

  D. Whether there are Signs of Collusion.

  "When, as here, the settlement was negotiated before the district court certified the class, there is an even greater potential for a breach of fiduciary duty by class counsel, so [the Ninth Circuit] require[s] the district court to undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Volkswagen "Clean Diesel" Mktg. Litig., 895 F.3d 597, 610-11 (9th Cir. 2018) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court carefully scrutinized the settlement and determined that it was the product of arms-length negotiations, (see Dkt. 52, PAO at 15-16), and that there was "no evidence that the settlement [was] 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id. at 16) (quoting Rodriguez, 563 F.3d at 965).

  Nothing has changed since preliminary approval to raise any red flags or "subtle signs" of collusion. No funds will revert to defendant, (see Dkt. 46-1, Settlement Agreement at ¶ 18), and although the Settlement Agreement includes a clear sailing provision, (see id.), the court is persuaded that the provision does not undermine the fairness of the settlement. See Bluetooth, 654 F.3d at 948. Moreover, any fees not awarded to class counsel will be added to the settlement fund from which payments to class members will be made. See Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

  In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

  The Settlement Agreement provides that defendant will not oppose class counsel's request

for an award of attorney's fees up to 30% of the Settlement Fund. (See Dkt. 46-1, Settlement Agreement at ¶ 18). Class counsel now seek such an award, which amounts to $432,000. (See Dkt. 53, Fees Motion at 8).

A.   Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."[10] Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942.

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Hyundai, 926 F.3d at 570. Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Hanlon, 150 F.3d at 1029; In re Hyundai, 926 F.3d at 570 (same). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir.

---

[10] Although the operative complaint asserts both state law claims and a FLSA claim, the court will exercise its discretion and apply federal law to the award of attorney's fees. See, e.g., Hoffman v. Constr. Prot. Servs., Inc., 2006 WL 6105638, *3 (C.D. Cal. 2006) ("Where the Complaint invokes both state and federal law, the method of calculating attorney's fees rests in the Court's discretion.").

11

2019). Indeed, adjustment of the lodestar is warranted only in "rare and exceptional cases[.]" Bluetooth, 654 F.3d at 942 n. 7 (internal quotation marks omitted).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029; In re Hyundai, 926 F.3d at 570 (same). The Ninth Circuit "has established 25% of the common fund as a benchmark[,]" Hanlon, 150 F.3d at 1029, "for a reasonable fee award[.]" Bluetooth, 654 F.3d at 942; In re Hyundai, 926 F.3d at 570-71 (recognizing the 25% benchmark and noting that the percentage of the fund is "a rough approximation of a reasonable fee"). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." In re Hyundai, 926 F.3d at 570; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Under the circumstances of this case, the court finds that an award of 25% of the common fund is a reasonable fee. Although counsel achieved a favorable result for the class, the results

were not extraordinary or exceptional.[11] See, e.g., Taylor v. TIC - The Industrial Company, 2018 WL 6131198, *7 (C.D. Cal. 2018) (declining to depart from 25% benchmark where the results achieved were not "extraordinary"); Adoma, 913 F.Supp.2d at 983 (finding that recovery of $2,000 per class member in wage and hour class action was "positive" but "not so exceptional as to . . . justify an increase in the 25% benchmark"); Clayton v. Knight Transp., 2013 WL 5877213, *7 (E.D. Cal. 2013) (declining fee award of one third of the common fund where the results achieved for the class were "good" but not "exceptional"). With respect to the third factor, the skill required and quality of work, the court finds that it is neutral. While counsel is experienced, "litigation in this case has not been especially extensive[.]" McLeod v. Bank of America, N.A., 2019 WL 1170487, *6 (N.D. Cal. 2019). For example, "Plaintiff did not face any motions to dismiss . . . and discovery was not far-ranging." Id.; (see, generally, Dkt.). Moreover, the risks of litigation and the contingent nature of the fee were not out of the ordinary so as to merit a departure from the 25% benchmark. See Taylor, 2018 WL 6131198, at *8 (finding that wage and hour class action did not carry "the type of extreme risk that would merit a departure from the 25% benchmark" and that contingent nature of the fee was neutral as to the fee award). Finally, the case did not present complex or novel issues, and plaintiff did not face a dispositive motion.[12] (See, generally, Dkt). In short, the court is not persuaded that a fee award of 30% is warranted in this case.[13]

B. Costs.

---

[11] Class counsel characterize the settlement as "excellent[,]" (see Dkt. 53, Fees Motion at 18); however, as the court noted during the fairness hearing, counsel relied on an incorrect number of class members who would be sharing in the settlement.

[12] Class counsel point to several cases that have departed from the 25% benchmark. (See Dkt. 53, Fees Motion at 18 n. 2). The court does not quarrel with the fact that it has discretion to depart from the benchmark, and that indeed, it should consider the circumstances of each case to determine a reasonable fee award. Rather, as discussed above, the court finds that the circumstances of this case do not warrant a departure.

[13] Class counsel assert that their lodestar figure of $353,702.50 supports their fee request since it would equate to a 1.58 multiplier. (See Dkt. 53, Fees Motion at 24). However, as with the benchmark, this case does not warrant a multiplier. See Bluetooth, 654 F.3d at 942 n. 7 (Adjustment of the lodestar is warranted only "in rare and exceptional cases[.]") (internal quotation marks omitted).

Class counsel seek $12,135.26 in costs. (See Dkt. 53, Fees Motion at 8, 26). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $12,135.26 in costs.

C. <u>Class Representative Service Award</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." <u>Staton</u>, 327 F.3d at 977; see <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiff requests that the court grant a service award in the amount of $5,000. (<u>See</u> Dkt. 53, Fees Memo at 9, 26-29).

Such an incentive award is presumptively reasonable, see <u>Dyer v. Wells Fargo Bank, N.A.</u>, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable), and the court finds that it does not create a conflict of interest between plaintiff and class members. <u>See</u>, <u>e.g.</u>, <u>In re Online DVD-Rental</u>, 779 F.3d at 947-48 (upholding reasonableness of $5,000 incentive awards that were roughly 417 times larger than $12 individual awards because the number of representatives was relatively small, and the total amount of incentive awards "ma[de] up a mere .17% of the total settlement fund").

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Unopposed Motion for Final Approval of Settlement **(Document No. 57)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Second Amended Stipulation of Settlement and Release Between Plaintiff and Defendant ("Settlement Agreement") (Document No. 46-1). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and an Enhancement Award

**(Document No. 53)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 15.e. of the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Jose Tinoco shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $360,000.00 in attorney's fees, and $12,135.26 in costs in accordance with the terms of the Settlement Agreement and this Order.

8. The Claims Administrator, CPT, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. The LWDA shall be paid $15,000 pursuant to the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

Dated this 10th day of April, 2020.

/s/
Fernando M. Olguin
United States District Judge

15